UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EASY PAY SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00085-SDN |
| | ) | |
| JAMES TURNER d/b/a | ) | |
| COACTIVE PARTNERS, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

## **INTRODUCTION**

This case arises from a contractual dispute between Easy Pay Solutions ("EPS"), an electronic payment processing business, and James Turner (doing business as CoActive Partners), an agent who marketed EPS's services for a fee. For nearly seventeen years, the parties operated pursuant to a written agreement (the "Agreement"). ECF No. 10 at 8–9, ¶¶ 5–6. EPS terminated the Agreement effective June 28, 2023. *Id.* at 11, ¶¶ 16–17. EPS contends the terms of the Agreement require EPS to pay CoActive for only two years after termination of the Agreement. ECF No. 1 at 4, ¶ 18. CoActive argues a separate document, titled "Clarification," validly modifies the original Agreement and entitles CoActive to payment in perpetuity. ECF No. 10 at 11, ¶ 14.

EPS brought this action by filing a single Complaint, simultaneously petitioning the Court to compel arbitration of the parties' dispute pursuant to an arbitration clause in the Agreement and requesting a declaratory judgment to determine the meaning of the Clarification. ECF No. 1. CoActive answered and counterclaimed for declaratory relief and

1

breach of contract. ECF No. 10. EPS then moved to dismiss those counterclaims and to compel arbitration. ECF No. 15.

For the reasons below, the Court grants EPS's petition to compel arbitration and dismisses the case.

## BACKGROUND[1]

### I.    Factual Background

EPS is an electronic payment processing business providing credit card transaction hardware and software to merchants. ECF No. 10 at 8, ¶ 4. When EPS customers collect credit card payments, they pay EPS a fee. *Id.* at 9, ¶ 7.

James Turner is an independent contractor who, under the CoActive moniker as its sole proprietor, sought "to provide credit card processing services to health care providers and recurring payment merchants." ECF 10-1, at 1. Turner also occasionally worked as an employee at EPS. ECF No. 10 at 9, ¶ 6. On June 29, 2006, CoActive and EPS signed the Agreement under which CoActive would market EPS's products and services to merchants. *Id.* at 8, ¶ 5. Pursuant to the Agreement, if CoActive successfully solicited a merchant for EPS, EPS would pay CoActive a portion of the revenue the merchant generated. *Id.* at 9, ¶ 8. Either the Agreement or "a separate agreement or understanding"

---

[1] I have drawn these facts from CoActive's counterclaim. Motions to compel arbitration are typically resolved under the summary judgment standard. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 176 (1st Cir. 2021). When the parties do not submit evidentiary materials, *Air-Con* instructs courts to "evaluate the motion to compel arbitration pursuant to the Rule 12(b)(6) standard." *Id.* at 177 n.10. In an unusual procedural posture such as this one, *see infra* pp. 6–11, it's not clear what standard the Court should apply. Because EPS prevails on its motion to compel under any standard, the Court proceeds under the standard most favorable to CoActive, taking the facts alleged in its counterclaim as true. The Court notes it would reach the same result if it relied exclusively on facts from EPS's Complaint that CoActive admits to, particularly ¶¶ 11, 12, 13, 20, 21, and 27, which establish that EPS and CoActive entered into the Agreement, the Agreement directed them to resolve disputes under the Agreement through arbitration, and the Clarification purported to amend the Agreement. ECF No. 1.

determined the percentage each party was entitled to. *Id.* The parties referred to this process as "boarding" a merchant. *See id.* at 9, ¶ 8.

CoActive's business with EPS did not always follow the standard form; some transactions were more complex. CoActive occasionally solicited independent software vendors ("ISVs"), which are not merchants. In such cases, EPS and CoActive would work together to integrate EPS's payment software into ISVs' software. Then, when merchants—mostly healthcare providers—contracted to use ISVs' software, the merchants would separately board with EPS for its integrated payment processing system. *Id.* at 9, ¶ 9.

### A. EPS Allegedly Cuts CoActive Out

In 2018, an ISV named InSync Healthcare Solutions ("InSync") integrated with EPS and began boarding merchants onto EPS's payment system. InSync and EPS did not form a written agreement determining the revenue split,[2] but for the next five years they operated under the "customary split": 50% to EPS, 30% to InSync, and 20% to CoActive. *Id.* at 10, ¶ 12. In December 2023, EPS "renegotiated" the split with InSync and agreed in writing that InSync would receive 60% of revenue, with the potential to increase to 80%. *Id.* CoActive alleges EPS then "began cutting CoActive out of the split for all new [m]erchants boarded by EPS through InSync." *Id.* Further still, CoActive alleges that after terminating the Agreement, EPS stopped paying CoActive its share for "all new [m]erchants boarded by EPS" through any ISV that CoActive had solicited. Accordingly, CoActive claims EasyPay breached the Agreement. *Id.* at 13, ¶ 24.

---

[2] CoActive alleges on April 29, 2018, CoActive and EPS agreed to an amendment to the Agreement, ("Amendment") "which established the commission split for CoActive with respect to certain ISVs." ECF No. 10 at 10, ¶ 13.

## B. CoActive and EPS Negotiate the "Clarification"

In June 2018, Turner (the sole proprietor of CoActive) approached EPS to negotiate potentially returning to his occasional position as an EPS employee. Turner sought retirement benefits but, according to CoActive, EPS "decided that it would be more cost-effective" to retain CoActive as a contractor "by offering CoActive perpetual residual income from the [m]erchants boarded by CoActive with EPS." ECF 10 at 11, ¶ 14. This arrangement "was offered in lieu of the requested retirement benefits." *Id.*

CoActive alleges EPS and CoActive memorialized this deal in a document titled "Clarification to Agent Agreement between Easy Pay Solutions (EPS) and Coactive Partners, Jim Turner (Distributor) dated June 29, 2006."[3] ECF 10-3. It reads in whole:

> Section 7.3    Assignment. In the event that EPS sells the company or sells or assigns its merchant portfolio, or purchaser or assignee sells or moves Distributor's portfolio, Distributor's commission under this Agreement will continue unchanged. Purchaser or assignee agrees to continue paying Distributor's commission as long as Distributor's merchants and sub-distributors' merchants are processing transactions. In the event that Distributor's merchants are migrated to a different bank, processor, or software platform, Distributor will continue to receive all commissions as defined under the Agreement dated June 29, 2006 and the Amendment dated April 29, 2018. The intent of this Amendment is to protect Distributor's future commissions in spite of organizational or any other changes that may occur, such that Distributor will reap the future benefits of his efforts.

ECF No. 10-3. The Clarification is dated June 15, 2018, and appears to be signed by the former president of EPS.[4] CoActive claims "the Clarification was intended to provide for perpetual payment" to CoActive. ECF No. 10 at 12, ¶ 19. In its first counterclaim for declaratory relief, CoActive asks this Court to determine that "the

---

[3] The Agreement is dated June 29, 2006. ECF No. 10-1 at 1.

[4] The signatory's name is not printed. However, EPS explains in its motion to dismiss that the former president of EPS sent the document. ECF No. 15 at 2. And, though the signature is not completely legible, it matches the signature of the same former president who signed the Agreement. *Compare* ECF No. 10-1 at 14, *with* ECF No. 10-3 at 1.

Clarification is valid and enforceable, making residual payments owing to CoActive for as long as EPS or an assignee of EPS receives them." *Id.* at ¶ 21. EPS alleges the Clarification is not supported by consideration and therefore has no force, and asks this Court to declare the Clarification inoperative. ECF No. 1 at 5, ¶¶ 22–26; ECF No. 1 at 7.

### C. Arbitration

The Agreement dictates "[a]ll disputes arising under this agreement shall be settled with binding arbitration under the laws of the state of Delaware." ECF No. 10-1 at 13. The arbitration clause does not designate a location for arbitration, however. The Agreement also provides it "shall be governed by, and construed in accordance with the laws of the State of Nevada, including its conflict of laws rules." *Id.*

Pursuant to this arbitration clause,[5] EPS moves to compel arbitration and dismiss CoActive's counterclaims. ECF No. 15.

### II.   The Parties' Arguments

EPS raises two issues in its complaint. First, it requests a declaratory judgment that the Clarification "has no operative effect on the parties' rights and obligations under" the Agreement and is "not related to and/or within the scope of the parties' agreement to arbitrate." ECF No. 1 at 7. Then, EPS petitions this Court to compel arbitration of "the parties' dispute in the judicial district of this Court." *Id.* at 8.

---

[5] The Agreement also references a "Standard Licensing Agreement," used to license EPS's software to merchants. ECF No. 10-1 at 10. An exhibit to the Agreement contains a sample copy of the Standard Licensing Agreement, signed by CoActive as a licensee. *Id.* at 27. The signed Standard Licensing Agreement contains an arbitration clause: "Any dispute between you and EPS relating to this Agreement, that cannot be resolved through mutual negotiation, shall be subject to arbitration in Portland, Maine." *Id.* Neither party acknowledged this second arbitration clause in their filings. At oral argument, both parties argued the Standard Licensing Agreement has no effect on the issues before the Court.

CoActive raises two counterclaims. First, it requests a declaratory judgment that the "Clarification is valid and residuals are payable to CoActive on a perpetual basis" or, alternatively, that "the Clarification is an arbitrable component of the Agreement that falls within the scope of the parties' agreement to arbitrate." ECF No. 10 at 13. This request for a declaratory judgment aligns with EPS's first request to compel arbitration of the parties' dispute. CoActive also raises an unrelated claim for breach of the Agreement. ECF No. 10 at 13.

EPS now moves to dismiss CoActive's counterclaims and compel arbitration. But EPS says some of CoActive's counterclaims should remain, namely "so much of CoActive's First Cause of Action seeking a determination as to whether the 'Clarification' is related to the Agreement, and thus subject to arbitration." ECF No. 15 at 8 n.1. At oral argument, EPS clarified its position that the Court should decide whether the Clarification is valid but should send all other issues to arbitration. For its part, CoActive argued the Court should either decide every issue on the merits or send every issue to arbitration.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements are "valid, irrevocable, and enforceable," 9 U.S.C. § 2, reflecting Congress's intent to create a "liberal federal policy favoring arbitration." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 173 (1st Cir. 2021) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). When a party bound by an arbitration agreement nonetheless fails to arbitrate, the FAA "provides two parallel devices for enforcing [the] agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, 9 U.S.C. § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

6

## I.    The Procedure Here

When a party seeks an affirmative order to engage in arbitration under § 4 of the FAA, the party typically initiates judicial proceedings by filing a petition to compel arbitration as the initiating document.[6] *E.g.*, *Stevenson v. Oct. Princess Holdings, LLC*, No. 05-240, 2006 WL 1519160, at *1 (D. Me. May 26, 2006), *R&R adopted*, 2006 WL 1720169 (June 22, 2006) (describing action initiated by "Verified Petition to Compel Arbitration"); *Franlogic Scout Dev., LLC v. Scott Holdings, Inc.*, No. CV 16-5042, 2018 WL 2002203, at *2 (E.D. Pa. Apr. 30, 2018) ("Petitioners initiated the action before this Court by filing a Petition to Compel Arbitration"). A petition to compel is not a complaint, nor is it a pleading of any sort—it is a more akin to a motion. 9 U.S.C. § 6 (requiring petitions to compel arbitration to "be made and heard in the manner provided by law for the making and hearing of motions"); *see ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 110 (2d Cir. 2012) (holding petition to compel arbitration is a motion, not a pleading).

The distinction is more than a technicality. The Federal Rules of Civil Procedure draw clear lines between pleadings and motions. Rule 7 enumerates the types of pleadings allowed, and a petition to compel arbitration is not one of them. Fed. R. Civ. P. 7(a). Rule 8 requires pleadings to make a "short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), while Rule 7 requires motions to "state with particularity the grounds for seeking [an] order," Fed. R. Civ. P. 7(b)(1)(B). Rule 12

---

[6] Federal Rule of Civil Procedure 3 provides a party commences an action "by filing a complaint with the court." However, the Federal Rules only apply insofar as they don't conflict with the FAA. Fed. R. Civ. P. 81(a)(6)(B). Section 4 of the FAA clearly contemplates a party seeking an order compelling arbitration by filing a petition, not a complaint. 9 U.S.C. § 4 (stating a party may "petition" the court for an order and describing "the district in which *the petition* for an order directing such arbitration is filed" (emphasis added). Therefore, § 4 supersedes Rule 3 in this manner.

distinguishes between defenses which may be asserted in motions and those which must be raised in responsive pleadings. Fed. R. Civ. P. 12(b).

The FAA's command that a petition to compel be "made and heard in the manner provided by law for the making and hearing of motions" further differentiates a petition from a pleading. 9 U.S.C. § 6. First, District of Maine Local Rule 7(a) requires every motion to "incorporate a memorandum of law," unlike a pleading. D. Me. Local R. 7(a). Second, Local Rule 7(b) requires a party to file an objection to the motion (not an answer), with a memorandum of law, within 21 days. D. Me. Local R. 7(b).

EPS commenced this action by filing a document titled "Complaint," petitioning for an order to compel arbitration while also requesting declaratory relief. ECF No. 1. Though unusual, at least one other court in this Circuit has construed such a filing as simultaneously a petition and complaint. *See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. CIV.A. 12-11874, 2013 WL 3335022, at *5 (D. Mass. July 1, 2013) (construing complaint and petition to compel arbitration combined in one joint filing as distinct pleading and motion, respectively), *aff'd sub nom.*, *Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25 (1st Cir. 2014).

Here, EPS's "Complaint" comports with the requirements of Federal Rule of Civil Procedure 7(b)(1) for motions, thus substantially satisfying the FAA's command to make the petition in the manner provided by law for making motions: the petition is "in writing," it "state[s] with particularity the grounds for seeking" to compel arbitration, and "state[s] the relief sought." Fed. R. Civ. P. 7(b)(1). However, EPS's "Complaint" does not strictly comply with District of Maine Local Rule 7(a) for motions because it does not incorporate a memorandum of law.

CoActive's answer presents a similar problem. "An answer is a responsive pleading, not a motion, that may in turn only be filed in response to certain enumerated pleadings, and not to motions." *ISC Holding*, 688 F.3d at 112 (citations omitted). Though CoActive's answer properly responded to EPS's first cause of action for declaratory relief because that cause of action formed a pleading, *see* Fed. R. Civ. P. 7(a), CoActive's answer did not (and could not) properly respond to EPS's petition to compel arbitration, because the petition to compel was a motion not a pleading, *see ISC Holding*, 688 F.3d at 112 (holding defendant "unquestionably *could not have filed an answer*" in response to petition to compel arbitration). The consequence for CoActive's failure to properly oppose can be draconian: District of Maine Local Rule 7(b) requires a party opposing a motion to file a written objection with incorporated memoranda of law within 21 days, or the objection is deemed waived. *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 5 (1st Cir. 2002) ("Courts in the District of Maine routinely apply [Local Rule] 7(b) in situations where the opposing party fails to file an objection to a motion, regardless of whether the motion is dispositive."). CoActive finally opposed the petition to compel arbitration when it responded to EPS's motion to dismiss (which reiterated and expanded on EPS's petition to compel), long after the 21-day window to oppose the initial petition closed.[7]

Nonetheless, the Court excuses both EPS's failure to comply with Local Rule 7(a) and CoActive's delay in opposing EPS's petition.[8] The Court "may relax" its enforcement

---

[7] CoActive's opposition was not deficient insofar as it opposed EPS's motion to compel arbitration *of CoActive's counterclaims*, because that issue was raised for the first time in EPS's motion to dismiss.

[8] Alternatively, the Court could treat EPS's petition as deficient, thereby absolving CoActive of any requirement to oppose the petition within 21 days. *See Bridgeport Mgmt., Inc. v. Lake Mathews Min. Properties, Ltd.*, No. 14-CV-00070, 2014 WL 953831, at *3 (N.D. Cal. Mar. 6, 2014) ("[B]ecause Petitioner failed to notice its Petition . . . pursuant to Local Rule 7–2(a), Respondents were not required to respond within the fourteen-day deadline provided for by Local Rule 7–3(a), either."). The result is the same either way.

of any Local Rule "in exceptional circumstances when justice so requires." D. Me. Local. R. 1(a). The District of Maine's Local Rule 1(a), like other districts' "savings clause[s]," "mirrors the widely-accepted idea that a district court should be accorded considerable latitude in applying local procedural rules of its own making, and in departing from them." *United States v. Diaz-Villafane*, 874 F.2d 43, 46 (1st Cir. 1989). Moreover, the First Circuit has held district courts generally may suspend a local rule when there is a "sound reason for the departure and no party's substantial rights have been unfairly jeopardized." *Garcia-Goyco v. L. Env't Consultants, Inc.*, 428 F.3d 14, 19–20 (1st Cir. 2005).[9] Even assuming Local Rule 1(a)'s "exceptional circumstances" requirement is higher than the First Circuit's "sound reason" bar, the Court finds such exceptional circumstances are present in this case.

First, the Court is unable to find a single case in which Local Rule 7(a) has been enforced against a party seeking to compel arbitration—despite numerous cases in which the initiating petition was unaccompanied by a memorandum of law. *E.g.*, *Tech. Cap., LLC v. Richard*, No. 08-cv-422, 2009 WL 1163498 (D. Me. Apr. 15, 2009); *Stevenson*, No. 05-240, 2006 WL 1519160. Second, neither party objected to the other's failure to strictly comply with the Local Rules. Enforcing Local Rule 7 against the parties would thus deprive them of the judicial resolution they seek, for a reason neither objects to. Third, considering the parties arguments on the question of arbitration—rather than treating either the petition or the opposition as waived on a technicality—favors the liberal federal

---

[9] Because I find Local Rule 1(a) permits me to depart from Local Rule 7(a), I need not decide whether Local Rule 7(a) in this context imposes "a requirement of form" or of substance. Fed. R. Civ. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.").

policy favoring arbitration and the FAA's command to "hear" the parties. *Moses H. Cone*, 460 U.S. at 24; 9 U.S.C. § 4.

Therefore, the Court finds there are exceptional circumstances justifying relaxation of Local Rule 7's strictures. D. Me. Local. R. 1(a). The Court has before it a petition to compel arbitration, ECF No. 1, a complaint for declaratory relief, *id.*, a reassertion of the petition to compel, ECF No. 15, a memorandum of law in support, *id.*, and an opposition to the petition, ECF No. 18, and will consider these filings on their merits.

## II.   Analysis

On a motion to compel arbitration, the movant "bears the burden of demonstrating 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'"[10] *Air-Con*, 21 F.4th at 174 (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)). Here, both parties acknowledge the Agreement directs them to binding arbitration to resolve "[a]ll disputes arising under [the] [A]greement," thus satisfying the first prong. ECF No. 1 at 6, ¶ 27; ECF No. 10 at 3, ¶ 27. Neither party disputes that the arbitration agreement binds them both or that the other is entitled to invoke it, thus satisfying the second and third prongs. Under *Air-Con*, the only remaining question is whether "the claim asserted comes

---

[10] EPS argues under an alternative three-prong exposition of the standard. ECF No. 15 at 5. "In deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (quoting *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)). The First Circuit first identified this standard in 2008, *Combined Energies v. CCI, Inc.*, 514 F.3d 168 (1st Cir. 2008), but more frequently (and most recently) references the four-prong version. Accordingly, I proceed under the four-prong standard.

within the clause's scope." *Air-Con*, 21 F.4th at 174. In addition, the Court must determine whether EPS waived the right to arbitrate through its litigation conduct,[11] whether the Court can order arbitration outside of Maine, and whether the Court should stay or dismiss this action.

## A. Scope

Unless an arbitration agreement expressly provides otherwise, a court (not the arbitrator) must decide the arbitration clause's scope. *Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 101 (1st Cir. 2007). In doing so, the court "rigorously enforce[s]" the terms of the agreement. *Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

At the same time, courts presume "the parties likely gave at least some thought to the scope of arbitration," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995), against the backdrop of the FAA's "liberal federal policy favoring arbitration," *Bosse*, 992 F.3d at 31 (quoting *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 12 (1st Cir. 2017)). Therefore, if the agreement to arbitrate covers at least "some issues," other matters are "presumed to be arbitrable 'unless it is clear that the arbitration clause has not included them.'" *Id.* (quoting *First Options*, 514 U.S. at 945). An arbitration agreement is a contract, *Bosse*, 992 F.3d at 27, so a court must rely on ordinary state-law contract principles to interpret

---

[11] Whether the movant waived the right to petition to compel arbitration is distinct from whether the movant is entitled to invoke an arbitration agreement. *See FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (explaining that courts begin with the four factors, including whether the movant is entitled to invoke the clause, and "[o]nly then" consider waiver). The latter question of a movant's entitlement to invoke an arbitration agreement goes to *who* is attempting to invoke the clause, not traditional procedural bars like waiver or estoppel. For example, can an employee invoke an arbitration agreement her employer signed with an agent corporation, but to which she is not a signatory? *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014). Waiver, on the other hand, is about whether a party entitled to invoke arbitration nonetheless voluntarily relinquished its right to do so.

its scope,[12] *id.* at 27 n.6 (quoting *First Options*, 514 U.S. at 944). EPS argues Delaware law and Nevada law apply.[13] Under either state's law, the Agreement's arbitration clause covers all the disputes in this lawsuit.

Nevada borrows the federal presumption in favor of the arbitrability of disputes. Courts in Nevada generally "resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n of Firefighters, Loc. No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (Nev. 1996). Because an arbitration agreement's scope is a matter of contract interpretation, the presumption in favor of arbitrability is strong when the clause's language is broad, and weak when the language is narrow. *See SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022). A broad provision "encompasses all disputes related to or arising out of an agreement." *Id.* A narrow provision covers only "specific issues, subject matter[s], or dollar amounts." *Id.* at 799.

The arbitration agreement here covers "[a]ll disputes arising under this agreement." ECF No. 10-1 at 13. The clause is broad under Nevada law, because it does not limit arbitration to specific issues or subject matters under the Agreement. *SR Constr.*, 510 P.3d at 799; *see also* Thomas H. Oehmke & Joan M. Bovins, 1 *Commercial Arbitration* § 6:7 (2023) ("[P]recise language in an arbitral provision delimits arbitration to an identified subset of disputes . . . .").

---

[12] This is not to say every issue must be resolved under state law. Questions regarding "when a party's litigation conduct results in loss of a contractual right to arbitrate"—that is, waiver—generally are resolved under federal law. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416 (2022).

[13] EPS argues Delaware law, which points to the FAA, "governs the enforcement of the parties' agreement to arbitrate," ECF No. 15 at 4, and "Nevada law governs . . . whether a valid agreement to arbitrate exists." *Id.* at 5. EPS does not argue which state's law should apply to this Court's determination of the arbitration clause's scope. *See id.* at 6. Similarly, CoActive does not argue for this Court to apply any single state's law, but rather suggests that under either Delaware, Nevada, or Maine law, EPS has waived its right to seek arbitration. ECF No. 18 at 14. Like EPS, CoActive does not discuss which state's law should apply to the scope question.

To be sure, the language is slightly less expansive than the archetypal "broad" arbitration clause because it does not explicitly cover disputes "related to" the Agreement, only those "arising under" the Agreement. But Nevada courts have found that similar clauses are nonetheless broad. For example, the Nevada Supreme Court found an arbitration clause covering "any controversy or claim arising out of [the contract] or the [parties'] relationship" to be broad. *Wellness Connection of Nev., v. Ghanem*, No. 86270, 2024 WL 4862955, at *3 (Nev. Nov. 21, 2024). Therefore, under Nevada Law, the Agreement's arbitration clause is broad and the presumption in favor of arbitrability is strong.

Delaware also recognizes the "strong public policy in favor of arbitration embodied in federal law." *See, e.g.*, *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007). As in Nevada, a Delaware court engages in a two-step inquiry to determine the scope of an arbitration agreement. *Id.* at 430.

> First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.

*Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002). Narrow arbitration provisions cover only "specific types of disputes." *Milton Invs., LLC v. Lockwood Bros., II, LLC*, No. CIV.A. 4909, 2010 WL 2836404, at *6 (Del. Ch. July 20, 2010). Broad provisions "refer[] all disputes under the agreement to arbitration." *Id.* (quoting *HDS Inv. Holding Inc. v. Home Depot, Inc.*, No. CIV.A. 3968, 2008 WL 4606262, at *5 (Del. Ch. Oct. 17, 2008)). When used in an arbitration clause, the phrase

14

"all disputes arising under the [a]greement" is broad. *McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008).

The arbitration provision at issue here uses nearly identical language to that in *McLaughlin*, only substituting "this" Agreement for "the" agreement. ECF No. 10-1 at 13. Therefore, the Agreement's arbitration clause is broad under Delaware law and "any issues that touch on contract rights or contract performance" must be referred to arbitration. *Parfi Holding*, 817 A.2d at 155.

Mindful that both Nevada and Delaware law provide for a presumption in favor of arbitration, the Court finds the disputes in this lawsuit are covered by the Agreement's arbitration clause under both Nevada and Delaware law. EPS's first cause of action and CoActive's first counterclaim invoke the Clarification. Any claim arising under the Clarification also arises under the Agreement, because the Clarification purports to modify the Agreement. The Clarification is titled "Clarification to Agent Agreement between Easy Pay Solutions (EPS) and Coactive Partners, Jim Turner (Distributor) dated 29, 2006," which refers to the Agreement. The Clarification uses the header "Section 7.3 Assignment" which mirrors the header of Section 7.3 of the Agreement. The Clarification references the Agreement in nearly every sentence. And the operative language allegedly providing for perpetual payment refers to CoActive's "commission under this Agreement." ECF No. 10-3. Indeed, the Clarification essentially would be meaningless without reference to the Agreement. Therefore, EPS's first cause of action and CoActive's first counterclaim are covered by the Agreement's arbitration clause under Nevada and Delaware law.

CoActive's second counterclaim alleges EPS breached the Agreement and the Amendment by modifying the share split with InSync and refusing to pay CoActive its

appropriate share since the Agreement terminated. Because this claim plainly arises under the Agreement by alleging a breach of the Agreement, it, too, is subject to the arbitration clause under Nevada and Delaware law.

To the extent there is any "doubt[] concerning the arbitrability of the subject matter of [these] dispute[s]," the Court must resolve those doubts in favor of arbitration under Nevada and Delaware law because the presumption of arbitrability applies. *Int'l Ass'n of Firefighters*, 929 P.2d at 957; *Parfi Holding*, 817 A.2d at 156. "Only the most forceful evidence of a purpose to exclude the claim[s] from arbitration" will overcome that presumption. *SR Constr*. 510 P.3d at 798 (quoting *Clark Cnty. Pub. Emps. Ass'n v. Pearson*, 798 P.2d 136, 138 (Nev. 1990)). Neither party has presented evidence of such purpose. Therefore, the disputes fall within the scope of arbitration.

EPS argues that one issue remains outside the scope of arbitration: whether the Clarification is "related" to the Agreement. According to EPS, if the Court finds the dispute over the Clarification falls within the scope of the Agreement's arbitration clause, that presupposes the validity of the Clarification as a modification of the Agreement. EPS worries the arbitrator will then be constrained by this Court's ruling to uphold the Clarification as a valid modification of the Agreement, thereby determining the merits of the dispute in favor of CoActive. EPS instead asks this Court to find the Clarification is "unrelated" to the Agreement, which CoActive fears would determine the merits of the dispute *against* CoActive.

Neither party need be concerned. Whether a dispute falls within the scope of a broad arbitration clause is a distinct question from the merits of the claim. Arbitration in this context is a mechanism to resolve disputes and claims that "touch on" contract rights and performance. *Parfi Holding*, 817 A.2d at 155. The Court finds the dispute here

16

(whether the Clarification validly modifies the Agreement) simply touches on the parties' rights and duties under the Agreement because the Clarification *purports* to modify the Agreement—but no more. An arbitrator will determine whether the Clarification *actually* modifies the Agreement.

For the foregoing reasons, the Court finds EPS's first cause of action and CoActive's first and second counterclaim fall within the scope of the Agreement's arbitration clause.

### B. Waiver

Either party to an arbitration agreement may expressly or impliedly waive its right to arbitrate.[14] *Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). The First Circuit treats questions of waiver as a matter of federal law.[15] *Id.* at 948; *see also Morgan*, 596 U.S. at 416–17 (assuming, without deciding, that federal law applies, and noting the Courts of Appeals' agreement). Five factors guide the waiver inquiry in this context:

> (1) [W]hether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the

---

[14] Who decides questions of waiver, the court or the arbitrator? In *Howsam v. Dean Witter Reynolds, Inc.* the Supreme Court distinguished between two types of "gateway question[s]" of arbitrability: substantive questions (such as scope) and procedural questions (such as waiver). 537 U.S. 79, 84 (2002). Courts presumptively decide substantive questions while arbitrators presumptively decide procedural ones. *Id.* at 84–85. However, the First Circuit has held that this presumption does not "disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005). If a party "litigat[es] . . . its claims before a court rather than an arbitrator," it may waive its right to arbitrate. *Id.* at 11. This type of waiver, which implicates the court's "power to control the course of proceedings before it and to correct abuses of those proceedings" is best decided by the court itself. *Id.* at 13. Other forms of waiver—explicit, for example—presumptively remain in the arbitrator's purview under *Howsam*. Here, CoActive argues EPS waived the right to arbitrate by suing in federal court. Because that would be litigation conduct waiver, it falls outside *Howsam*'s presumption and must be decided by the court.

[15] CoActive analyzes waiver under state law (Nevada, Delaware, and Maine). ECF No. 18 at 4–5. Though this is incorrect as a matter of First Circuit precedent, the gist of CoActive's argument under state law applies with equal weight to the federal doctrine.

court by filing a counterclaim"; [and] (5) whether discovery not available in arbitration has occurred.[16]

*FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (quoting *Restoration Preservation Masonry v. Grove Eur., Ltd.*, 325 F.3d 54, 60–61 (1st Cir. 2003)). The Court must "resolve any doubts in favor of arbitration." *Id.*

CoActive argues EPS waived the right to seek arbitration of CoActive's counterclaims because EPS acted inconsistently with arbitration by filing this lawsuit. As described above, the Court construes EPS's initial filing as both a petition to compel arbitration under § 4 of the FAA and a complaint for declaratory relief.

By filing the petition to compel, EPS availed itself of the FAA's protection to attempt to enforce the arbitration clause. Because the FAA expressly contemplates suing to compel arbitration in this manner, 9 U.S.C. § 4, doing so cannot result in waiver of the right to arbitrate. Otherwise, § 4 would be rendered toothless.

CoActive argues EPS's simultaneous claim for declaratory relief "forced" CoActive to "expend time and resources to defend against" the claim in court and was "inconsistent with the right to arbitrate." ECF No. 18 at 5. CoActive also faults EPS for adopting these allegedly inconsistent positions "without pleading in the alternative." *Id.* at 6.

First, EPS was not required to plead in the alternative because, as described above, a petition to compel arbitration is not a pleading. Second, other courts have recognized that a party may simultaneously take litigation positions both consistent and inconsistent with arbitration without waiving its right to arbitrate. *See Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970). In *General Guaranty*, the

---

[16] A sixth factor, "requir[ing] parties asserting waiver to show prejudice," was abrogated by the Supreme Court in *Morgan*. *See Jubilant Generics Ltd. v. Dechra Veterinary Prod., LLC*, No. 23-cv-00237, 2024 WL 1329714, at *4 n.5 (D. Me. Mar. 28, 2024).

defendant answered a complaint on the merits but alternatively requested a stay pending arbitration. The Fifth Circuit rejected the plaintiff's argument that the defendant must choose between arguing for arbitration or arguing the merits: "No such election [is] required." *Id.* at 929.

Moreover, at the time EPS petitioned for an order to compel, EPS had not "substantially invoked" the litigation machinery, filed a counterclaim, or engaged in discovery. *FPE Found.*, 801 F.3d at 29; *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001) (explaining that in determining waiver, federal courts look at "the time an intention to arbitrate was communicated" by the party moving to compel (quoting *Jones Motor Co., Inc. v. Chauffeurs, Teamsters, and Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir. 1982)). Because EPS petitioned for an order to compel in its very first filing with this Court, EPS cannot be said to have delayed in pursuing arbitration. *FPE Found.*, 801 F.3d at 29. Therefore, I decline to find EPS waived its contractual right to arbitrate the disputes. Because the disputes fall within the scope of the Agreement's arbitration clause and EPS did not waive its right to arbitrate, I will order the parties to arbitrate their disputes.

### C. Location

The arbitration clause in the Agreement does not specify a location for arbitration. CoActive argues "it is unreasonable to force CoActive to arbitrate in Maine" because CoActive is a sole proprietorship based in Oregon, and EPS is a Nevada corporation with principal offices in Illinois.[17] ECF No. 18 at 7.

---

[17] EPS alleged in its complaint that its principal place of business is in Portland, Maine. ECF No. 1 at 2, ¶ 4. At oral argument, CoActive seemed to concede the Court's inability to order arbitration in Oregon, noting upon inquiry that such a directive would be "a bit of a reach."

The FAA directs courts to enforce arbitration agreements within the judicial district in which they sit. 9 U.S.C. § 4 ("[T]he court *shall* make an order directing the parties to proceed to arbitration . . . . The hearing and proceedings . . . *shall* be within the district in which the petition [was filed]." (emphasis added)). Courts have carved a narrow exception to the FAA's clear mandate by declining to order arbitration when an arbitration agreement expressly provides for a forum outside the hearing court's judicial district. *Booth v. Citizens Bank, N.A.*, 691 F. Supp. 3d 443, 451 (D.R.I. 2023) (declining to order arbitration despite finding dispute was arbitrable because agreement mandated forum outside judicial district); *see Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974) (noting the "somewhat paradoxical situation" this creates). *Compare* 9 U.S.C. § 4 (requiring court to order arbitration "in accordance with the terms of the agreement"), *with id.* (requiring court to order arbitration "within the district").

Here, because the Agreement does not identify a location for arbitration, the Court must order arbitration within the judicial district in which EPS filed its petition. 9 U.S.C. § 4. Therefore, the Court orders the parties to arbitrate their disputes within the District of Maine.

### D. Stay or Dismiss

Having concluded the parties' dispute is arbitrable and ordered them to arbitrate, I must decide whether to dismiss this case or stay the proceedings pending the outcome of the arbitration.

Section 4 of the FAA does not instruct courts on how to proceed after ordering arbitration in response to a § 4 petition. 9 U.S.C. § 4. *Contra id.* § 3 ("[T]he court . . . shall on application of one of the parties stay the trial of the action . . . ."). But typically, "a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable."

*Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 (1st Cir. 1998). When no issues remain to be decided by the court, "retaining jurisdiction and staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (quoting *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)). Here, the parties have been ordered to arbitrate all issues raised by both parties. Therefore, dismissal is appropriate.

CoActive argues *Smith v. Spizzirri*, 601 U.S. 472 (2024), precludes the Court from dismissing this case. *See* ECF No 18 at 4. In *Spizzirri*, the Court held that under § 3 of the FAA, when "a dispute is subject to arbitration, *and a party has requested a stay* of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." 601 U.S. at 475–76 (emphasis added). The Court's careful inclusion of the "request" prerequisite at every turn in its opinion indicates such request was critical to the Court's analysis. *See id.* at 474–75, 478. Its inclusion is particularly conspicuous because the Court recognized that one court of appeals had found a stay was required "even where no party requested a stay." *Id.* at 475 n.1 (citing *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008)). Nowhere did the Court suggest it was adopting the Seventh Circuit's broad view. Indeed, that view is inconsistent with the plain text of § 3, which requires a court to stay a case "on application of one of the parties." 9 U.S.C. § 3.

*Spizzirri* does not apply here for two reasons. First, EPS petitioned to compel arbitration under § 4 of the FAA, not § 3. Section 4, unlike § 3, does not provide that courts "shall" stay the proceedings. 9 U.S.C. §§ 3–4; *see Spizzirri*, 601 U.S. at 476 (relying on the "plain statutory text"). Second, even if § 3 did apply, no party has requested a stay in this case. EPS moved to dismiss. ECF No. 15. CoActive argued that the Court could not dismiss

21

the case under *Spizzirri* but did not actually request a stay. ECF No. 18 at 4. At oral argument, the Court asked counsel for CoActive whether any party had requested a stay, and counsel confirmed that no party sought a stay. Without such a request, the Court is under no obligation to stay the case.

Of course, the Court retains inherent power to manage its docket by staying cases. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). In this case, the Court finds no purpose in continuing to exercise jurisdiction when no issues remain. Therefore, the parties are ordered to proceed to arbitration pursuant to the Agreement, and this case will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS EPS's petition to compel arbitration. ECF No. 1. The Court also GRANTS EPS's motion to compel arbitration of CoActive's counterclaims. ECF No. 15. The parties are hereby ORDERED to arbitrate EPS's first cause of action and CoActive's counterclaims pursuant to the Agreement within the District of Maine. The case is DISMISSED.

SO ORDERED.

Dated this 10th day of January, 2025.

/s/ Stacey D. Neumann

U.S. DISTRICT JUDGE